OPINION
Brenda Luttrell was found guilty of murder by a jury in the Montgomery County Court of Common Pleas. She was sentenced to fifteen years to life imprisonment and was ordered to pay restitution in the amount of $9,588. She appeals from this conviction, raising two assignments of error.
The state's evidence established the following facts.
John Barnes arrived at Superba Court in Dayton, Ohio just before midnight on May 12, 2000, driving a car with four passengers. He parked his car on the side of Superba Court, which is an alley wide enough for two cars to pass. Barnes and his passengers left the vehicle for a few minutes to talk to friends or use the restroom. Once Barnes and his passengers were all back in the car, Barnes attempted to start it but was unable to do so because the car was apparently out of gas. Several witnesses testified that Barnes was frustrated when his car, which he had recently acquired, would not start.
At this point, Luttrell arrived at Superba Court. She attempted to flirt with Chad Carlton, a passenger in Barnes' vehicle, but was told she was old enough to be his mother. She then began to insult Barnes, calling him an "Opie Taylor looking motherfucker." Barnes ignored her for several minutes. At least one witness testified that Luttrell then threatened to hit Barnes' car, and several others testified that she backed up, revved her engine, and angled her car toward his. Barnes told her not to hit his car; then he got out of his vehicle and punched her windshield twice, breaking it. After Barnes hit her windshield, Luttrell backed her car up several feet.
Barnes then moved around to the front of Luttrell's vehicle, pushing off her hood as he went around the car. Several witnesses testified that Luttrell then threatened to hit Barnes with her car and revved her engine again. In particular, one witness stated that Luttrell said "Motherfucker, I'll hit you." She then proceeded forward and hit Barnes with the front passenger side of her car. His leg was caught and he fell backward, striking his head on a car bumper and then on the concrete. A couple of witnesses testified that Luttrell swerved toward Barnes or chased him in order to hit him with her car. Several witnesses testified that, after hitting Barnes, Luttrell put her car in reverse as though she were going to run over him again.
After hitting Barnes, Luttrell got out of her car and leaned against the car on which Barnes had struck his head. Although all of the witnesses gave different accounts of what Luttrell said as she stood over Barnes' body, all of the witnesses within hearing distance recalled her saying something inappropriate to the situation. The comments witnesses remembered included: "You won't punch my windshield no more;" "I hope you are dead. Now talk your shit;" and "Get up, get up, you little motherfucker. You ain't hurt. You ain't bad." One witness testified that Luttrell said, "Motherfucker should be dead. I hope he dead. And I bet this motherfucker won't fuck with me no more. I told his ass I'll hit him." None of the witnesses saw any remorse, panic, or fear from Luttrell. The police officers who questioned Luttrell also testified that she was relaxed, that she admitted that she had said something bad to Barnes before he got out of his vehicle, and that she admitted to hitting Barnes with her car.
Barnes died of blunt head trauma at the hospital the next day.
Luttrell was indicted on June 12, 2000 for one count of murder and one count of involuntary manslaughter. The murder count was for violation of R.C. 2903.02(B), Ohio's felony murder statute. The underlying felony was felonious assault. A jury found Luttrell guilty of murder on July 21, 2000. On August 7, 2000, she was sentenced to fifteen years to life imprisonment and ordered to pay restitution of $9,588.
Luttrell raises two assignments of error, which we will discuss in reverse order.
 THE VERDICT RENDERED BY THE JURY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
Under this assignment of error, Luttrell argues that the evidence did not support the jury's verdict for two reasons. First, she argues that the evidence did not show that she had acted knowingly, which the state had been required to prove to establish the felonious assault that formed the basis of Luttrell's felony murder charge. Second, she argues that the jury ignored the defense of accident. These two arguments are basically the same.
When a conviction is challenged on appeal as being against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."State v. Thompkins (1997), 78 Ohio St.3d 380, 387, citing State v.Martin (1983), 20 Ohio App.3d 172, 175. A judgment should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." Martin, 20 Ohio App.3d at 175.
The jury in this case did not clearly lose its way when it found Luttrell guilty. The state presented an abundance of evidence as recounted above from which the jury could have found that Luttrell had acted knowingly and not accidentally.
The second assignment of error is overruled.
 THE TRIAL COURT ERRED WHEN IT RULED THAT O.R.C. 2903.02(B) WAS NOT UNCONSTITUTIONAL.
Under this assignment of error, Luttrell argues that the trial court erred when it found that Ohio's felony murder statute, R.C. 2903.02(B), is not unconstitutional as applied to her. Her arguments appear to center primarily on the equal protection clause and on her contention that Barnes' death was accidental.
R.C. 2903.02(B) provides that "No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree." Luttrell was charged under this statute with causing the death of Barnes as a proximate result of felonious assault. She argues that the felony murder doctrine is unconstitutional as applied to accidental deaths because it allows a defendant to be convicted of murder without requiring the state to prove purposeful conduct. Thus, Luttrell argues that the statute treats killings that are only done "knowingly" the same as those that are done "intentionally." In support of this argument, Luttrell cites only two Ohio cases, both of which found that the statute was constitutional. See Ohio v. Hayden (July 14, 2000), Lake App. No. 99-L-037, unreported; State v. Bowles (May 11, 2001), Lake App. No. 99-L-075, unreported. Luttrell also cites a Michigan case holding that Michigan's common law felony murder doctrine is unconstitutional. SeePeople v. Aaron (1980), 409 Mich. 672, 731-33, 299 N.W.2d 304, 328. That case noted that felony murder was particularly unfair in cases of accidental death. See id.
We find Luttrell's reliance on the Michigan case to be misplaced. As we discussed above, the jury clearly found that Luttrell's actions were not accidental. The jury was given an instruction on the defense of accident, which it rejected by finding Luttrell guilty. Furthermore, the Michigan court was construing its common law, not a statute, and Michigan has since passed a felony murder statute. Mich.Comp. Laws Ann.750.316(1)(b).
Turning to the equal protection argument, we note initially that all legislative enactments enjoy a strong presumption of constitutionality. See State v. Thompkins (1996), 75 Ohio St.3d 558, 560. Furthermore, the burden is on Luttrell to establish that the statute is unconstitutional beyond a reasonable doubt. See id. As no suspect class or fundamental right is involved, the appropriate test for our analysis is rational basis review. See State v. Williams (2000), 88 Ohio St.3d 513, 530-31. The Supreme Court of Ohio has stated that, under this standard:
 [W]e are to grant substantial deference to the predictive judgment of the General Assembly. * * * The state does not bear the burden of proving that some rational basis justifies the challenged legislation; rather, the challenger must negative every conceivable basis before an equal protection challenge will be upheld.
Id. Luttrell has failed to negate any arguments justifying the passage of R.C. 2903.02(B). We find that the statute is justified by a rational basis. The United States Supreme Court, in holding that the Eighth Amendment was not violated by imposition of the death penalty in a felony murder case where the defendants had not even been the murderers, stated that:
 [S]ome non intentional murderers may be among the most dangerous and inhumane of all-the person who tortures another not caring whether the victim lives or dies, or the robber who shoots someone in the course of the robbery, utterly indifferent to the fact that the desire to rob may have the unintended consequence of killing the victim as well as taking the victim's property. This reckless indifference to the value of human life may be every bit as shocking to the moral sense as an "intent to kill."
Tison v. Arizona (1987), 481 U.S. 137, 157, 107 S.Ct. 1676, 1688. Clearly, the Ohio legislature could have had a similar justification for passing R.C. 2903.02(B). Thus, the statute passes rational basis analysis, and we find that it is not unconstitutional, either facially or as applied to Luttrell.
The first assignment of error is overruled.
The judgment of the trial court will be affirmed.
BROGAN, J. and GRADY, J., concur.